STATE OF CONNECTICUT *v.* JOHN P. CROOM

HOUSE, C. J., SHAPIRO, LOISELLE, MACDONALD and BOGDANSKI, JS.

Argued December 7, 1973—decision released March 26, 1974

*Edwin M. Lavitt,* special public defender, with whom was *Harold M. Levy,* for the appellant (defendant).

*Donald B. Caldwell,* state's attorney, for the appellee (state).

BOGDANSKI, J.   The defendant was an inmate of the Connecticut correctional institution at Somers at the time of the alleged offenses. Upon a trial to the jury he was found guilty of assaults upon two correctional institution employees and of possession of a weapon.[1]   All of the defendant's assignments of error are directed at rulings on evidence, and are tested by the finding.   Practice Book §§ 630, 635, 648; *State* v. *Mahmood,* 158 Conn. 536, 537, 265 A.2d 83.

The finding discloses that the defendant was one of a group of inmates confined in the segregation unit at Somers on the night of August 25, 1970. The state offered evidence to prove and claimed to have proved the following facts: On the night in question an inmate named Johnson, who was confined in

---

[1] The defendant was charged with violating General Statutes §§ 53-15, 53-16a, and 53-167b, all of which were subsequently repealed and replaced by General Statutes §§ 53a-59—53a-61 and 53a-174a.

the cell next to that of the defendant, was creating a disturbance. After he refused to stop the disturbance and leave his cell voluntarily, prison guards forcibly removed him. As Johnson was being removed the defendant threw "magic shave powder," a caustic preparation used to remove facial hair, at the guards, striking one of them in the face and eyes. The defendant was then asked to come out of his cell, but he too refused, saying that he was going out "the same way Johnson went." He charged the first officer who entered his cell, wielding a plastic comb with two pieces of razor blade embedded in each side to make a knife-like weapon. The officer received a cut on his right forearm and other officers were struck in the struggle that followed. Thereafter, another officer picked up the defendant's weapon inside his cell. None of the guards was armed, and no mace was used to subdue the defendant.

The defendant offered evidence to prove and claimed to have proved the following facts: On August 25, inmate Johnson complained of being sick with a hemorrhoidal condition and asked for medical attention, but none was given to him. From August 14 through August 25, the guards had been hostile to and had harassed the group of inmates in the segregation unit, and the defendant feared for his personal safety. The night shift captain on August 25, George Pechka, and another officer were particularly hostile to the defendant and Johnson. Johnson was removed from his cell by about thirty officers, who used mace. He was beaten, kicked and handcuffed, and then dragged past the defendant's cell to the "strip cell." The defendant was told that he would be next. The guards then entered his cell,

used mace to subdue him, beat him, and dragged him to the "strip cell." The comb with the razor blades embedded in it was located on a ledge in front of an adjacent cell and was not in the defendant's possession when the guards entered his cell.

At the trial the defendant claimed that he was acting in self defense, and sought to show that his use of force was reasonable. The trial court permitted the defendant to introduce evidence of the conduct of the guards of which he was aware prior to and during his removal from his cell. The defendant also attempted to offer testimony as to the behavior of the guards subsequent to the removal of both Johnson and himself from their cells. He claimed that this testimony was relevant to show the hostility of the guards to him at the time of the assault. Although Johnson was removed from his cell first, the defendant failed to show that he was aware of what the guards did with Johnson. The court ruled that evidence of the subsequent behavior of the guards was inadmissible unless, in the case of the guards' treatment of Johnson, the defendant first showed that he had had knowledge of that treatment.

A defendant, charged with assault, may claim legal justification because he acted in defense of his personal safety. However, "[t]he right of self-defense does not arise from a mere apprehension of danger but only from actual or reasonably expected attack. . . . [I]t is the facts as they reasonably appeared to the defendant at the time he acted . . . which measure the existence of the right of self-defense." 1 Wharton, Criminal Law and Procedure § 349, p. 700; *Hanauer* v. *Coscia,* 157 Conn. 49, 54, 244 A.2d 611; see also General

Statutes § 53a-19. Hence, in the present case, evidence of occurrences which might have influenced the defendant's state of mind at the time of the assault is relevant. But conduct of the guards after the assault had already taken place, and other conduct of which the defendant was unaware, could have had no effect on his state of mind at the time of the assault. Evidence of the guards' subsequent conduct with respect to the defendant and Johnson was, therefore, not relevant to the claim of self defense, and was properly excluded. *State* v. *Alford,* 31 Conn. 40, and *State* v. *Mills,* 51 N.J. 277, 240 A.2d 1, cited by the defendant, are not in point. Those cases stand for the proposition that evidence of the conduct of a defendant subsequent to the commission of a crime is admissible to show the defendant's state of mind at the time of the crime. That proposition is simply an application of the general principle that an individual's conduct may constitute evidence of his mental state, because his mental state may be reflected in the observed conduct. See 2 Wigmore, Evidence (3d Ed.) § 265.

The defendant also claims that the trial court erred in permitting the state's attorney to ask a defense witness, an inmate named Charles Dukes, to name the felony for which he had been confined to Somers. On direct examination, Dukes had testified that he had been confined for the commission of a felony. The credibility of a witness may be impeached by proof of the prior conviction of a crime for which imprisonment may be more than one year. General Statutes § 52-145; *State* v. *Hall,* 165 Conn. 599, 606, 345 A.2d 17. The defendant contends that because the state's attorney stated at the trial that he did not ask Dukes to name

his felony conviction for purposes of impeachment, the trial court should have excluded the witness' answer. The trial court is allowed a liberal discretion in fixing the limits of cross-examination, particularly if it affects credibility. *State* v. *Marquez,* 160 Conn. 47, 52, 273 A.2d 689. The only possible effect of Dukes' testimony as to his felony conviction was to impeach his credibility. Since the testimony was admissible for that purpose, was within the scope of the direct examination, and did not serve to prejudice the jury against the defendant, its admission was not an abuse of discretion despite the statement of the state's attorney.

The defendant has attacked three rulings which, he claims, prejudicially limited his right to impeach the credibility of the state's witnesses. The defendant failed to claim this ground of admissibility in the trial court with respect to two of the rulings, and we therefore do not review them. *State* v. *Hawkins,* 162 Conn. 514, 515–16, 294 A.2d 584. The third ruling prevented the defendant from introducing into evidence a prison log entry dated September 15, 1970. On direct examination by the defense, Captain Pechka had testified that he had made the decision on August 25 to remove Johnson and the defendant from their cells because of the excessive noise in the segregation block, and that he would have given the same order again in a similar situation. The court permitted the defendant to question Pechka about conditions in the segregation block on September 15 for the limited purpose of testing his credibility, provided that the defendant first made a showing that conditions in the segregation block on August 25 and September 15 were similar. Pechka testified that he was on duty on

September 15, but that he did not recall whether the segregation block was noisy that evening, nor what actions he took. He further testified that the log entry for September 15 did not refresh his recollection, although it contained the notation "Noisy Block." The defendant then offered the September 15 entry as an exhibit, to show that on an occasion similar to the evening of August 25, Pechka did not order the removal of any inmates from their cells, thereby contradicting his previous testimony. The trial court sustained the state's objection to this offer. The bare log entry was clearly insufficient to show that conditions on September 15 were similar to conditions on August 25. The trial court did not abuse its broad discretion to limit the scope of examination on credibility.

The defendant has abandoned his remaining assignments of error by failing to include them in his brief. *State* v. *Grayton,* 163 Conn. 104, 109, 302 A.2d 246; Maltbie, Conn. App. Proc. § 327.

There is no error.

In this opinion the other judges concurred.