## STATE OF CONNECTICUT *v.* JONATHAN MILLER

PETERS, HEALEY, PARSKEY, ARMENTANO and SHEA, Js.

Argued January 14—decision released April 13, 1982

*Joette Katz,* assistant public defender, with whom, on the brief, was *Jerrold H. Barnett,* public defender, for the appellant (defendant).

*John M. Massameno,* assistant state's attorney, with whom, on the brief, were *Francis M. McDonald, Jr.,* state's attorney, and *Paul E. Murray,* assistant state's attorney, for the appellee (state).

ARMENTANO, J. The defendant appeals from a conviction of assault in the first degree in violation of General Statutes § 53a-59 (a)(1), for which he was sentenced to a term of not less than nine nor more than eighteen years. The defendant admits to having "shot" the victim outside the Naugatuck Valley Mall in Waterbury on December 17, 1977, with a .38 caliber handgun. At trial, he claimed that either the handgun discharged accidently, or he acted in self defense.

The jury could have reasonably found the following facts: On December 17, 1977, the defendant, his friend, Winston Dwyer, and Selena Saunders, a girlfriend of the defendant, traveled to the Naugatuck Valley Mall to visit Saunders' sister who worked at a mall store. Soon after arriving at the mall, they encountered the victim, a former boyfriend of Saunders, whom she introduced to the men. Following this brief encounter, the victim departed from the threesome, but subsequently fol-

lowed them around the mall at a distance. After a time the victim approached the defendant and asked him to "step outside" the mall with him because the defendant had "disrespected" him, presumably by dating Saunders. In front of Saunders, Dwyer and some onlookers, the pair spoke loudly to one another, the victim repeating his request that the defendant leave the mall with him, and the defendant refusing the request. After a few minutes the defendant and Dwyer briefly stepped away from the others, during which time the defendant took possession of Dwyer's .38 caliber handgun. The defendant held the gun in his hand concealing it within the folds of the knee length coat he was wearing. He then accompanied the victim outside followed by Saunders, Dwyer, and onlookers, some of whom may have been friends of the victim. Shortly after leaving the mall, the defendant shot the victim in the head with the gun he was carrying. The victim was not armed. As a result of the shooting the victim was in a semicomatose state through the time of trial, with scant hope of recovery. He had been a professional lightweight boxer.

To prove the charge of assault in the first degree, the state was required to prove, beyond a reasonable doubt, that the defendant, with intent to cause serious physical injury to another person, caused such injury by means of a deadly weapon or a dangerous instrument. General Statutes § 53a-59 (a)(1).[1] The defendant does not dispute that his acts caused serious physical injury by means of a deadly weapon.

---

[1] General Statutes § 53a-59 provides in pertinent part: "(a) A person is guilty of assault in the first degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument; or (2) with intent to disfigure

The defendant claims[2] that the trial court erred (1) in charging the jury on the elements of self defense in two respects, on specific intent in two respects, and on the credibility of the defendant's testimony; (2) in denying his motion to prevent the state from impeaching the defendant's credibility by introducing evidence of a prior felony conviction; and (3) in permitting the state to question the defendant on cross examination regarding his prior gun ownership.

## I

### JURY INSTRUCTIONS

The defendant's claims of error in the jury instructions arise for the first time on appeal. In order properly to preserve for appeal a claimed error in the trial court's charge to the jury, a party must take an exception when the charge is given that distinctly states the objection and the grounds therefor. Practice Book §§ 315, 854, 3060F (c) (1), (2); *State* v. *Nerkowski*, 184 Conn. 520, 523,

another person seriously and permanently, or to destroy, amputate or disable permanently a member or organ of his body, he causes such injury to such person or to a third person; or (3) under circumstances evincing an extreme indifference to human life he recklessly engages in conduct which creates a risk of death to another person, and thereby causes serious physical injury to another person."

[2] The state asserts that this court should decline to address the claims of error in the evidentiary rulings because the defendant failed to specify his claims in his preliminary statement of issues, as required by Practice Book § 3012(a). We note the same infirmity in the defendant's claims of error in the jury instructions, which were generally claimed as "[e]rror in trial court's instruction to jury." Although this court is not bound to consider these claims on appeal; *State* v. *Cannon*, 185 Conn. 260, 265 n.9, 440 A.2d 927 (1981); *Presutti* v. *Presutti*, 181 Conn. 622, 626, 436 A.2d 299 (1980); we will review those claims in this appeal which are otherwise reviewable because of their constitutional dimension. See *State* v. *Cannon*, supra, 265 n.9.

440 A.2d 195 (1981); *State* v. *Topciu,* 183 Conn. 1, 3, 438 A.2d 803 (1981); cf. Fed. R. Crim. Proc. 30. "The purpose of the rule is to alert the court to any claims of error while there is still an opportunity for correction in order to avoid the economic waste and increased court congestion caused by unnecessary retrials." *State* v. *Packard,* 184 Conn. 258, 281, 439 A.2d 983 (1981); see Practice Book § 860; *Henderson* v. *Kibbe,* 431 U.S. 145, 154, 97 S. Ct. 1730, 52 L. Ed. 2d 203 (1977).

This court need not consider claims not distinctly raised at trial and not arising subsequent thereto. E.g., Practice Book § 3063; *State* v. *Delafose,* 185 Conn. 517, 520, 441 A.2d 158 (1981); *State* v. *Evans,* 165 Conn. 61, 67, 327 A.2d 576 (1973). Such claims of error are considered waived. *State* v. *Evans,* supra, 66. Only in the most exceptional circumstances will this court consider even a constitutional claim not properly raised and decided in the trial court. Practice Book § 3063; *State* v. *Gooch,* 186 Conn. 17, 18, 438 A.2d 867 (1982); *State* v. *Packard,* supra, 271; *State* v. *Evans,* supra, 69; cf. *Hormel* v. *Helvering,* 312 U.S. 552, 557, 61 S. Ct. 719, 85 L. Ed. 1037 (1941); *Frommhagen* v. *Klein,* 456 F.2d 1391, 1395 (9th Cir. 1972). "Contrary to the impression which seems to prevail in some quarters, it is not true that defense counsel in criminal cases may through neglect, inattention or as a trial strategy refrain from making proper objection or raising in the trial court any available constitutional defenses, confident that if the outcome of the trial proves unsatisfactory without making objections and taking exceptions and raising any available constitutional issue they may still prevail by assigning error or raising the constitutional issue for the first time on the appeal." *State* v.

*Evans,* supra, 67; see *State* v. *Williams,* 173 Conn. 545, 560, 378 A.2d 588 (1977). Exceptional circumstances are presented only when (1) a new constitutional right not readily foreseeable arises between the time of trial and of appeal; or (2) the record is sufficiently complete to support a claim that the defendant was denied a fundamental constitutional right and a fair trial. *State* v. *Evans,* supra, 70; see, e.g., *State* v. *Gunning,* 183 Conn. 299, 302–303, 439 A.2d 339 (1981); *State* v. *Trent,* 182 Conn. 595, 598, 438 A.2d 796 (1981); *State* v. *Williams,* 181 Conn. 262, 267, 438 A.2d 80 (1980). The defendant asserts that each of his claims of error in the jury instructions presents exceptional circumstances under the second of the *Evans* tests. Accordingly, to determine whether we will reach the merits of each claim, we will examine whether it poses a question of fundamental constitutional dimension. *State* v. *Gooch,* supra, 18.

## A

The defendant claims two errors in the jury charge on the elements of self defense. The defendant first asserts that the trial court erred in giving a dictionary, rather than the statutory, definition of "deadly physical force." General Statutes § 53a-19 (a) establishes the justification of self defense in different terms depending on whether deadly physical force is used by the victim or the defendant. Moreover, a duty to retreat arises when deadly physical force is used. General Statutes § 53a-19 (b).[3] Although no request to charge

---

[3] General Statutes § 53a-19 provides: "(a) Except as provided in subsections (b) and (c) a person is justified in using reasonable physical force upon another person to defend himself or a third person from what he reasonably believes to be the use or

appears on the record, and the defendant did not take exception to this aspect of the charge,[4] the defendant asserts that this error denied him due process of law guaranteed by the fifth and fourteenth amendments to the United States constitution, and the constitution of Connecticut, article first, § 8. A fundamental element of due process is the right of a defendant charged with a crime to establish a defense. *Washington* v. *Texas,* 388 U.S. 14, 19, 87 S. Ct. 1920, 18 L. Ed. 2d 1019 (1967); *State* v. *Bethea,* 167 Conn. 80, 83, 355 A.2d 6 (1974). This fundamental constitutional right

---

imminent use of physical force, and he may use such degree of force which he reasonably believes to be necessary for such purpose; except that deadly physical force may not be used unless the actor reasonably believes that such other person is (1) using or about to use deadly physical force, or (2) inflicting or about to inflict great bodily harm.

(b) Notwithstanding the provisions of subsection (a), a person is not justified in using deadly physical force upon another person if he knows that he can avoid the necessity of using such force with complete safety (1) by retreating, except that the actor shall not be required to retreat if he is in his dwelling, as defined in section 53a-100, or place of work and was not the initial aggressor, or if he is a peace officer or a private person assisting such peace officer at his direction, and acting pursuant to section 53a-22, or (2) by surrendering possession of property to a person asserting a claim of right thereto, or (3) by complying with a demand that he abstain from performing an act which he is not obliged to perform.

(c) Notwithstanding the provisions of subsection (a), a person is not justified in using physical force when (1) with intent to cause physical injury or death to another person, he provokes the use of physical force by such other person, or (2) he is the initial aggressor, except that his use of physical force upon another person under such circumstances is justifiable if he withdraws from the encounter and effectively communicates to such other person his intent to do so, but such other person notwithstanding continues or threatens the use of physical force, or (3) the physical force involved was the product of a combat by agreement not specifically authorized by law."

[4] The defendant did take an exception to the charge on self defense, but not on the grounds asserted in this appeal.

includes proper jury instructions on the elements of self defense so that the jury may ascertain whether the state has met its burden of proving beyond a reasonable doubt that the assault was not justified. See General Statutes § 53a-12 (a). Therefore, we will consider the merits of the claim under *Evans* and the defendant's second claim of error with respect to the self defense instructions.

General Statutes § 53a-3 (5) provides that when the term "deadly physical force" is used in the Connecticut penal code it "means physical force which can be reasonably expected to cause death or serious physical injury."[5] After stating the statutory elements of self defense, the trial court defined "deadly force" as "that force which is liable or certain to cause death." "A charge to the jury will not be critically dissected for the purpose of discovering possible inaccuracies of statements, but the charge is to be considered, rather, as to its probable effect upon the jury in guiding them to a correct verdict in the case." *State* v. *Cannon,* 185 Conn. 260, 269, 440 A.2d 927 (1981); see, e.g., *State* v. *Perez,* 183 Conn. 225, 229, 439 A.2d 305 (1981). Although usually the preferable course is not to deviate from the statutory definition, in the present case, where the "physical force" used is a gun, the substitution of language did not deprive the defendant of due process because the definition given did not materially differ from the statutory definition. Cf. *State* v. *Spates,* 176 Conn. 227, 237, 405 A.2d 656 (1978), aff'd sub nom. *Spates* v. *Robinson,* 179 Conn. 381, 426 A.2d 776 (1979).

---

[5] When used in the penal code, title 53a of the General Statutes, " '[s]erious physical injury' means physical injury which creates a substantial risk of death, or which causes serious disfigurement, serious impairment of health or serious loss or impairment of the function of any bodily organ. . . ." General Statutes § 53a-3 (4).

Moreover, the instruction given favored the defendant because force which is "liable or certain to cause death," as stated in the charge would be more difficult to prove than "force which can be reasonably expected to cause death or serious physical injury," as required by the statute.

The defendant also claims error in the trial court's instructions on the duty to retreat to avoid using deadly physical force in self defense. General Statutes § 53a-19 (b) provides in part that "a person is not justified in using deadly physical force upon another person if he knows that he can avoid the necessity of using such force *with complete safety* (1) by retreating . . ." except under circumstances not relevant here.[6] (Emphasis added.) The trial court quoted from this provision in its original charge. Later in that charge, the trial court referred to the duty to retreat in an instruction that "[t]he law says that if possible or feasible, the person attacked should retreat and get away from there before standing his ground and returning force with force." This statement was included in a discussion distinguishing defensive force from retaliatory or punitive force.[7] After a period of

---

[6] See General Statutes § 53a-19 set out in footnote 3.

[7] The trial court included the duty to retreat in the following context: "The law stresses that the defensive measures, as I said, must never be retaliatory. The force used must be a defensive force, not a reprisal or a punishing force. The law says that if possible or feasible, the person attacked should retreat and get away from there before standing his ground and returning force with force.

"So, if you follow the claim of the defendant, you ask yourself: did he take the proper defensive measures, the fending off measures, to protect himself; did he retreat or give ground or did he take some retaliatory measures or some stronger measures not reasonable in the light of that attack; how reasonable were the measures that he took. So much for the offense in question and the defense that was raised of self-defense."

deliberation, the jury requested clarification of the use of a deadly weapon in self defense. In its supplemental charge which essentially repeated the earlier instructions, the trial court again quoted the statutory provision on the duty to avoid the use of deadly physical force if the defendant knew he could retreat with complete safety; General Statutes § 53a-19 (b); but did not repeat its earlier reference to "possible or feasible" retreat. We do not think a general reference to the duty would reasonably be understood by the jury to modify the statutory language in which they were properly instructed. See *Chapman* v. *California,* 386 U.S. 18, 24, 26, 87 S. Ct. 824, 17 L. Ed. 2d 705, reh. denied, 386 U.S. 987, 87 S. Ct. 1283, 18 L. Ed. 2d 241 (1967); *State* v. *Rose,* 169 Conn. 683, 687–88, 363 A.2d 1077 (1975); *Aillon* v. *State,* 168 Conn. 541, 548, 363 A.2d 49 (1975), aff'd, 173 Conn. 334, 377 A.2d 1087 (1977). The jury was correctly instructed in the statutory language in both the original and the supplemental charge, and the trial court stressed that the state had the burden of disproving self defense beyond a reasonable doubt. Therefore, there was no error in the charge.

## B

The defendant claims two errors in the jury charge on the element of intent to cause serious physical injury to another person. General Statutes § 53a-59 (a)(1). Like the instructions on self defense, these claims of error were not properly preserved at trial by the defendant. This court, however, will review the claims under *Evans* because they clearly incorporate the state's constitutional burden to prove each element of a crime beyond a reasonable doubt. E.g., *In re Winship,* 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970).

Assault in the first degree as defined in General Statutes § 53a-59(a)(1), requires proof beyond a reasonable doubt of intent to cause serious physical injury to another person. Unlike the common law crime of assault, this statutory crime requires proof of the specific intent to achieve a serious degree of physical injury. *State* v. *Bitting,* 162 Conn. 1, 6, 291 A.2d 240 (1971). Intent is statutorily defined as a "conscious objective . . . to cause [a] result . . . ." General Statutes § 53a-3 (11).

In the charge on intent the trial court stressed that the state must prove that the defendant intended to cause serious physical injury to the victim. The court specified that intent "simply means that the defendant must have consciously acted with the objective of causing such harm." Then, after giving intervening instructions on self defense, the court instructed the jury that the defendant had claimed that the shooting was an accident, "not designed, not intended, not in derogation of human life, but pure accident on that score. It is true that if somebody is killed by a completely unforeseeable accident, out of the blue, without fault or improper motive or improper handling of firearms, then he is not guilty. And, so on that defense of pure accident, I am going to ask you to examine very closely: why did he have that gun with him at the time, because if he took that gun for an improper motive, whether to shoot [the victim], then pure accident is out of the picture. If he brought it over solely for the purpose of defending himself and, through no fault of his or improper gesture on his part or improper assault on his part, the gun went off through some complete accident, then you may accept this defense.

"So, you have the question before you of determining, first, you will take up the various elements of the crime of Assault in the First Degree and determine whether or not the State has proved those elements and then you will take up the question of self-defense and accident, questions of justification. If you find those proven, then, of course, your verdict will be not guilty, either one of those proven." Upon request of the jury after a period of deliberation, the trial court essentially repeated its charge on intent, including the definition of intent, but did not repeat its instructions on accident.

The principal evidence of accidental discharge was the defendant's testimony at trial, which contradicted a prior statement he made to the police that he had "shot" the victim and had "fired the gun." The defendant first raised the issue of accident when the state cross-examined him, and his counsel did not assert accident as a defense to intent before that testimony.

The defendant first claims that the charge on accident transformed assault from a specific intent crime to a general intent crime, which requires that the state prove that the defendant intended to do the act, and permitted the jury to return a guilty verdict without finding a concurrence of intent with the act of shooting, both of which deprive the defendant of his due process right to present a defense. Accident, unlike self defense, is not a justification for a crime. Unless the state has met its burden of proving each element of the crime beyond a reasonable doubt, no finding on the issue of justification is necessary. An accident, however, negates intent. Miller, Criminal Law (1934) § 53(e), p. 164. Accordingly, it would have been

more accurate for the trial court to have included instructions on accident while discussing the element of intent. This departure from the ideal organization of the charge does not rise to the level of constitutional error because the jury could not reasonably have found the intent necessary for a guilty verdict if it also found that the discharge of the gun was accidental.

Another aspect of the charge on accident was erroneous but does not reach reversible dimensions. If the charge on accident were considered in isolation, it would permit the jury to return a guilty verdict upon a finding that the defendant had an improper motive when he took possession of the gun, improperly handled the gun, or carried the gun outside for any purpose other than self defense, when any such action was followed by an improper gesture resulting in the discharge of the gun. Although these factors are relevant to intent, none is a substitute for the required finding of specific intent to cause serious physical injury to the victim at the time of the discharge of the gun. See LaFave & Scott, Criminal Law (1972) § 29. This error is not cured by the trial court's statement that implies that the improper motive is "whether to shoot [the victim]" because that statement referred to the motive at the time he took possession of the gun, which is not the time the jury must focus upon in finding specific intent.

For purposes of appellate review, however, these erroneous instructions are not considered in isolation, but are considered as part of the charge in its entirety. Because the error, if not cured by other instructions, would unconstitutionally deprive the defendant of due process of law, we must consider whether the state has met its burden of proving the

harmlessness of the error beyond a reasonable doubt by establishing that the jury could not possibly have been misled by the erroneous instructions.

The trial court repeatedly instructed that the state must prove the requisite intent beyond a reasonable doubt, and properly defined that intent. Any confusion that may have resulted from the original charge was cured by the supplemental charge on intent. Under these circumstances, we are satisfied that the state has met its burden of establishing harmless error.

The defendant's second claim of error in the charge on intent is that the court's instruction that "[e]very person is presumed to intend the natural and necessary consequences of his acts," unconstitutionally shifted the burden of proof to the defendant on intent and invaded the fact-finding province of the jury. E.g., *Sandstrom* v. *Montana,* 442 U.S. 510, 524, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979); *State* v. *Pina,* 186 Conn. 261, 263, 440 A.2d 967 (1982). Because this instruction implicates the denial of a fundamental right to due process and a fair trial, and *Sandstrom* v. *Montana* was decided after the trial in the present case, this court will consider the claim although it was not properly preserved for appeal. *State* v. *Cosgrove,* 186 Conn. 476, 482–83, 442 A.2d 1320 (1982); *Turcio* v. *Manson,* 186 Conn. 1, 4, 439 A.2d 437 (1982); *State* v. *Gunning,* 183 Conn. 299, 304, 439 A.2d 339 (1981).

No purpose would be served by repeating the reasoning for the rule that a conclusive presumption which requires a jury to find criminal intent from proof of the act is unconstitutional. See, e.g.,

*Sandstrom* v. *Montana,* supra, 517–18; *State* v. *Pina,* supra, 263; *Turcio* v. *Manson,* supra, 5. Whether the jury could reasonably have interpreted the presumption as unrebuttable must be decided by a consideration of the entire charge. E.g., *Sandstrom* v. *Montana,* supra, 514; *State* v. *Truppi,* 182 Conn. 449, 458, 438 A.2d 713 (1980), cert. denied, 451 U.S. 941, 101 S. Ct. 2024, 68 L. Ed. 2d 329 (1981); *State* v. *Vasquez,* 182 Conn. 242, 247–48, 438 A.2d 424 (1980). In considering similar charges as a whole, this court has not found reversible error when the trial court defined the presumption in permissive terms and clarified that the jury decides whether the state has proven criminal intent beyond a reasonable doubt. *State* v. *Pina,* supra, 264; *State* v. *Stankowski,* 184 Conn. 121, 150–52, 439 A.2d 918, cert. denied, 454 U.S. 1052, 102 S. Ct. 596, 70 L. Ed. 2d 588 (1981); *State* v. *Brokaw,* 183 Conn. 29, 34, 438 A.2d 815 (1981); *State* v. *Maselli,* 182 Conn. 66, 77–78, 437 A.2d 836 (1980), cert. denied, 449 U.S. 1083, 101 S. Ct. 868, 66 L. Ed. 2d 807 (1981); *State* v. *Arroyo,* 180 Conn. 171, 178–80, 429 A.2d 457 (1980). We find no basis for distinguishing the charge in the present case.

## C

The defendant next claims error in the trial court's instruction that the jury should consider the defendant's interest in the outcome of the trial in assessing the credibility of his testimony. Although the defendant did not take an exception to this instruction, he asserts that it deprived the defendant of the presumption of innocence, deprived him of due process of law, and depreciated his right to testify in his own defense and, therefore, should be subject to review by this court under

*Evans.* On several occasions we have considered similar instructions and have held that they do not implicate a fundamental constitutional right. E.g., *State* v. *Kurvin,* 186 Conn. 555, 570, 442 A.2d 1327 (1982) ; *State* v. *Maselli,* supra, 74; *State* v. *Mastropetre,* 175 Conn. 512, 525, 400 A.2d 276 (1978). Accordingly, we decline to consider this claim of error. *State* v. *Kurvin,* supra, 570.

## II

### EVIDENTIARY RULINGS

### A

The defendant claims that the trial court erred in denying his motion to prevent the state from impeaching the credibility of his testimony by excluding evidence of a conviction based on an August 11, 1978 plea of guilty of carrying a pistol without a permit in January, 1977 in violation of General Statutes § 29-35.[8] See General Statutes § 29-37. The trial court noted an exception to the ruling. Subsequent to the ruling, the defendant testified to the prior conviction during direct examination by defense counsel, and did not object to cross-examination regarding the conviction. The trial court instructed the jury that the prior conviction evidence should be considered only for the limited purpose of assessing the witness' credibility.[9]

---

[8] Although the defendant was also denied exclusion of a September 25, 1975 conviction of disorderly conduct; General Statutes § 53a-182; and a July 15, 1974 conviction of breach of the peace; General Statutes § 53a-181; neither one of these convictions was subsequently introduced at trial.

[9] The trial court gave the following instructions: "Now, the accused has admitted that he has been convicted of a felony. The particular felony involved here was that of Carrying a Weapon Without a Permit. That evidence you are entitled to consider as affecting his credibility as a witness. We have a statute that pro-

"It is well established that the credibility of a witness may be impeached by proof of prior convictions of crimes for which imprisonment may be more than one year." *State* v. *Townsend,* 167 Conn. 539, 563, 356 A.2d 125, cert. denied, 423 U.S. 846, 96 S. Ct. 84, 46 L. Ed. 2d 67 (1975) ; see, e.g., General Statutes § 52-145 ;[10] *Colton* v. *Manson,* 463 F. Sup. 1252, 1254 (D. Conn. 1979) ; *State* v. *Shaw,* 185 Conn. 372, 383, 441 A.2d 561 (1981), cert. denied, 454 U.S. 1155, 102 S. Ct. 1027, 71 L. Ed. 2d 312 (1982) ; *State* v. *Bitting,* 162 Conn. 1, 8–9, 291 A.2d 240 (1971) ; *State* v. *Marquez,* 160 Conn. 47, 52–53, 273 A.2d 689 (1970). The trial court is permitted wide discretion in fixing the limits of cross-examination, particularly on the issue of credibility. See *State* v. *DeSantis,* 178 Conn. 534, 545–46, 423 A.2d 149 (1979) ; *State* v. *Croom,* 166 Conn. 226, 231, 348 A.2d 556 (1974). The court may exclude

---

vides that no person shall be disqualified as a witness because of conviction of crime, but that such conviction may be shown to affect his credibility, that is, whether or not you will believe his testimony. The fact that a witness was convicted of a crime then does not disqualify him as a witness and it should not be considered in that light by you. At common law, of course, persons who have been convicted of felonies were not required—were not qualified to be witnesses at all. The statute that I have referred to has been construed to have as its purpose to make persons who have been convicted of felonies competent witnesses. It is not the intention of the legislature to make such persons entitled necessarily to full credit.

"The crime of which this accused admits conviction is a felony. And, the theory of the law is that crimes of the type mentioned involve certain traits of character which would affect a person's general credibility. Consequently, the fact of the conviction is one of the facts for you to take into consideration, along with any other material facts, in determining his credibility, the credibility which you will accord to the accused as a witness."

[10] General Statutes § 52-145 provides : "No person shall be disqualified as a witness in any action by reason of his interest in the event of the same as a party or otherwise, or of his disbelief in the existence of a supreme being, or of his conviction of crime; but such interest or conviction may be shown for the purpose of affecting his credit."

impeachment evidence of a prior conviction when the prejudicial impact of the evidence far outweighs its probative value. *State* v. *Bitting,* supra, 9–10. This court will not disturb the trial court's ruling unless it could not have reasonably concluded as it did, because we make every reasonable presumption in favor of its correctness. *State* v. *Bitting,* supra, 11; see *State* v. *Shaw,* supra, 384; *State* v. *Jones,* 167 Conn. 228, 237, 355 A.2d 95 (1974).

Because the court ruled on the defendant's motion before he testified, the defendant did not waive his right to claim error by testifying to the prior conviction during direct examination, presumably a tactical maneuver. See *State* v. *Jones,* supra, 236; *State* v. *Hall* 165 Conn. 599, 605–606, 345 A.2d 17 (1973). With respect to the merits of the claim, however, we hold that the trial court did not abuse its discretion in denying the defendant's motion. The facts underlying the conviction, which the defendant concedes was not remote in time, were not elaborated upon at trial. Although in both the crime charged and in the prior conviction, the defendant's carrying of a handgun was a significant factor, it does not necessarily follow, as the defendant claims, that the prejudicial impact of the admission far outweighed the probative value of the conviction to impeach the credibility of the defendant's testimony. In view of the foregoing and of the careful limiting instructions on the jury's use of the prior conviction evidence, the trial court was correct in denying the defendant's motion.

### B

Finally, the defendant claims error in the court's overruling of his objection to a question on cross-examination about prior gun ownership. In order

properly to preserve these claims for review by the court, the defendant should have taken an exception to the court's ruling on his objection to the introduction of the evidence. See Practice Book §§ 288, 3060F (c) (3); *State v. Shaw,* 186 Conn. 45, 48, 438 A.2d 872 (1982); *State v. Hoffler,* 174 Conn. 452, 461, 389 A.2d 1257 (1978); *State v. Colton,* 174 Conn. 135, 137–38, 384 A.2d 343 (1977), aff'd sub nom. *Colton v. Manson,* 463 F. Sup. 1252 (D. Conn. 1979); *State v. Roy,* 173 Conn. 35, 51–52, 376 A.2d 391 (1977); *State v. Johnson,* 166 Conn. 439, 444–45, 352 A.2d 294 (1974). Because of this failure to comply completely with the rules of practice, the claim is not properly preserved for appeal; nor has the defendant asserted that the claim is reviewable under *Evans.* Therefore, we decline to address the merits of the claim. Practice Book § 3063.

There is no error.

In this opinion PETERS, PARSKEY and SHEA, Js., concurred.

ARTHUR H. HEALEY, J. (concurring). I concur with the result reached by the majority. I write separately because I do not agree, as the majority states, that if that portion of the charge relating to accident "were considered in isolation," it would permit the jury to return a guilty verdict upon a finding that "the defendant had an improper motive when he took possession of the gun, improperly handled the gun, or carried the gun outside for any purpose other than self defense, when any such action was followed by an improper gesture resulting in the discharge of the gun."

The court charged in relevant part as follows: "And, so on that defense of pure accident, I am

going to ask you to examine very closely: why did he have that gun with him at the time, because if he took that gun for an improper motive, whether to shoot [the victim], then pure accident is out of the picture. If he brought it over solely for the purpose of defending himself and, through no fault of his or improper gesture on his part or improper assault on his part, the gun went off through some complete accident, then you may accept this defense." I believe this portion of the charge, even in isolation, allows the jury to do nothing more than rule out the defense of accident if they found that the defendant took the gun with an improper motive. I do not believe that this portion of the charge could reasonably be understood to permit the jury to find the defendant guilty of assault merely upon such a showing. There certainly can be no quarrel with the proposition that a finding of specific intent to cause serious physical injury to the victim is necessary to find a person guilty of this crime. General Statutes § 53a-59 (a) (1); *State* v. *Robinson,* 174 Conn. 604, 392 A.2d 475 (1978). I just do not believe that the court's instructions here could reasonably be understood to dilute that requirement. Therefore, I would find no error, and not harmless error, with this portion of the charge.