STATE OF CONNECTICUT *v.* MICHAEL IASEVOLI

PETERS, HEALEY, PARSKEY, ARMENTANO and SHEA, Js.

Argued May 7—decision released September 7, 1982

*Paul J. Yamin,* for the appellant (defendant).

*Paul E. Murray,* assistant state's attorney, with whom, on the brief, was *Francis M. McDonald,* state's attorney, for the appellee (state).

SHEA, J. A jury found the defendant guilty of larceny in the second degree as a receiver of stolen property in violation of General Statutes §§ 53a-123 (a) (2) and 53a-119 (8) and judgment was rendered accordingly. The defendant has appealed and claims error (1) in several rulings upon evidence; (2) in the failure to grant his motion for acquittal because of insufficient evidence; (3) in the denial of his motion to dismiss the information because the arrest warrant was issued without probable cause; (4) in the charge upon the standard applicable to a determination of the value of the stolen property; and (5) in the restrictions imposed upon the questioning of one juror during selection of the jury. We have concluded that there was error in the denial of the motion of the defendant to bar the use for impeachment purposes of his conviction for breaking and entering with criminal intent many years before trial. We find no error in the denial of the motions to dismiss and for acquittal. The remaining issues are discussed only to the extent that they are likely to arise upon a new trial.

I

The dispositive issue involves the denial of a motion made by the defendant after the prosecution had rested to prevent the use of a former felony conviction for the purpose of impeaching him if he should testify in his own defense. The ground relied upon by the defendant was the remoteness of the conviction, stated in the written motion filed by the defendant to have occurred "approximately

fifteen years ago" but described in his oral presentation to have been about nineteen years old.[1] The record is silent[2] as to the precise nature of the offense to which the conviction pertains, except that it was a felony. During argument before us, however, the state conceded that the criminal record of the defendant had been presented to the trial judge and that the crime involved was breaking and entering with intent to commit larceny. The trial court denied the motion to exclude the conviction. The defendant ultimately chose not to testify at his trial.

We have recently examined the several factors involved when the trial court is called upon to decide whether a prior conviction may be used for impeachment. *State* v. *Nardini*, 187 Conn. 513, 522-30, 447 A.2d 396 (1982). There we noted that a conviction for breaking and entering with criminal intent, because of its usual association with larceny, a crime involving dishonesty in the general sense, has been deemed sufficiently related to credibility to surmount the standard ten year limitation of the federal courts applicable to crimes having no special significance upon veracity. Id., 526. Federal Rules of Evidence § 609 (b). We found no error in the admission of that conviction, which was about twenty-six years old at trial, a greater age than the offense considered here. We also observed, however, several circumstances which minimized

---

[1] During argument of the motion counsel for the defendant stated: "One other thing. I think the Court is aware that this conviction occurred when Michael Iasevoli was nineteen years old. And, he is thirty-eight presently. So, it is almost twenty years ago."

[2] During argument of the motion the state's attorney argued that if the prior conviction had been for larceny by receiving stolen goods the court might be concerned about prejudice. He said further: "But the case here is not one where the conviction is precisely the same."

the detriment attendant upon that ruling sufficiently to justify a conclusion that the probative value of the conviction, eroded as it was, still outweighed such prejudice. Most significantly, we mentioned the fact that the defendant in *Nardini* was testifying in his own defense at the time of the ruling, unlike this defendant whose option to testify had not been exercised at that time. The possibility that he might be induced to remain silent, at least in part, by the fear that his former conviction would come to the attention of the jury is a circumstance of which the court should have been aware.[3] The fact that he did ultimately refuse to testify removes any basis for retrospectively diminishing the prejudice attendant upon the ruling. We also relied upon the dissimilarity between breaking and entering and the crime of arson charged in *Nardini* as an indication that the jury was not likely to have drawn any inference of propensity from commission of the prior crime.

Although the state has argued to the contrary, there is a close relationship between breaking and entering with intent to commit larceny and the crime charged against this defendant, larceny by receiving stolen goods in violation of § 53a-119 (8), because the latter crime is frequently a sequel of the former. With those factors on the scale to indicate that serious prejudice would arise from admission of the conviction and with no other circumstances to mitigate such effect, the probative value of the conviction would have to be quite substantial to warrant its use for impeachment. The value of that conviction upon the issue of credibility, after the passage of almost two decades, could not reason-

---

[3] The motion filed by the defendant to prevent use of his felony conviction for impeachment included a statement that he was "desirous of testifying in his defense."

ably be viewed as sufficient to outweigh the substantial prejudice which must have resulted. We conclude that the court did abuse its discretion in denying the defendant's motion to exclude his former conviction and we order a new trial.

## II

We must, nevertheless, consider the claim of the defendant that the evidence was inadequate to support a guilty verdict, because he would be entitled to an acquittal, not just a new trial, if his contention were correct.

There is no substantial dispute between the parties concerning the subordinate facts upon which the jury might reasonably have relied. On July 28, 1978, the Watertown police received a report of the theft of four El Fuego Model V wood burning stoves from the loading dock of the manufacturer. Each stove was about three feet by two feet by twenty inches in size and weighed 220 pounds. The stoves were packed in cardboard boxes. The suggested retail price of each stove was $579. The wholesale price varied, according to the quantity purchased, from $275 to $379.

On July 31, 1978, the defendant sold a new El Fuego stove to an acquaintance in Wolcott for $200. The stove was still in the packaging box when delivered a day or so after the sale. This stove was identified at trial by the plant manager of El Fuego Industries as being of the same model and appearance as the missing stoves. The stoves of this manufacturer were not given serial numbers. The manager testified that such a stove could not be purchased legitimately for $200 because the cost of manufacture was between $180 and $200 at that time.

On September 1, 1978, the police went to the defendant's home to inquire about the stoves. One officer observed through a window a red El Fuego Model V stove inside the house. When the defendant refused to admit the police, they left in order to obtain a search warrant. When they returned, the stove previously seen inside the house had been removed. Later that evening the police searched a wooded area near the defendant's house and found a red El Fuego stove of the same model as had been observed in the defendant's home. A witness testified that he had helped to move the stove from the defendant's house to the woods during the period of police surveillance while the search warrant was being obtained.

A third stove, still in the original carton, was recovered on September 9, 1978, from a garage at the home of the defendant's sister. His nephew testified that the defendant had brought three such stoves in cardboard boxes to the garage in the summer of 1978.

About eight months after the defendant was arrested, he had a conversation with the police during which his attorney was present. He said he had purchased these stoves from an unknown individual, one for $250 on July 14, 1978 and two others for $175 each on July 21, 1978. He produced two canceled checks payable to cash bearing these dates and in amounts corresponding to his testimony. The person to whom he gave the checks was not available for the trial because he was overseas with the Navy.

In his motion for acquittal the defendant claimed that there was insufficient evidence to prove that the stoves had been stolen. The asserted deficiency

in the proof is the inability of the plant manager to testify that the three stoves recovered by the police which he examined were among those discovered to be missing on July 28, 1978, when the crime was reported to the police. He testified that the three stoves were the same model as those which had been stolen. No further identification could be made because of the absence of serial numbers. Nevertheless, the jury could have relied upon other evidence as well as upon the fact that the three stoves were identical to those which had been stolen. The only legitimate sources for such stoves in the New England area were canvassed and all El Fuego stoves of this model delivered to them were accounted for. The defendant's actions in concealing the stove in his house showed a consciousness of guilt indicating his knowledge that it was stolen property. The sale of one of the stoves and the purchase of two others at prices well below the lowest wholesale price indicate that his source was not a legitimate channel for such a purchase. His acquisition of the three stoves coincides closely with the time when they were discovered to be missing. From this evidence the jury could reasonably have concluded, beyond a reasonable doubt, that the stoves had been stolen and that the defendant was aware of that fact. The motion for a judgment of acquittal was properly denied.

## III

We must also resolve the issues raised by the denial of the defendant's motion to dismiss before a new trial may be had. "This claim attacks the court's jurisdiction of the defendant's person and, if sound, would require a judgment dismissing the case against him." *State* v. *Licari,* 153 Conn. 127, 129, 214 A.2d 900 (1965). The motion alleged that

the arrest of the defendant, which was made pursuant to a warrant, was illegal because the affidavit submitted with the application for the arrest warrant does not adequately support a finding of probable cause. The defendant claims two deficiencies in the affidavit: (1) insufficient identification of the stoves found in the possession of the defendant; and (2) the absence of facts to justify an inference that the defendant actually knew that they were stolen.

The affidavit of the police officer stated that the plant manager of the stove manufacturer, El Fuego Industries, had identified the stove sold by the defendant to his acquaintance in Wolcott and also the one found in the woods near the defendant's home "as his stoves." The defendant criticizes this statement as hearsay, but it is well established that the court in finding probable cause may rely upon hearsay which meets certain standards of reliability. *Spinelli* v. *United States,* 393 U.S. 410, 415, 89 S. Ct. 584, 21 L. Ed. 2d 637 (1969); *United States* v. *Ventresca,* 380 U.S. 102, 108–109, 85 S. Ct. 741, 13 L. Ed. 2d 684 (1965); *Aguilar* v. *Texas,* 378 U.S. 108, 114, 84 S. Ct. 1509, 12 L. Ed. 2d 723 (1964). The affidavit sufficiently disclosed the basis for the identification by the plant manager and the circumstances attesting its reliability.

With respect to the element of knowledge on the part of the defendant that the stoves had been stolen, the affidavit described the removal of the stove from his home after the police had visited him and his concealment of it in the woods. These circumstances, which were later presented at trial, indicate sufficient consciousness of guilt to support an inference of probable cause with respect to this

mental element of the crime of receiving stolen goods. The court did not err in denying the motion to dismiss.

## IV

The remaining errors claimed are not likely to arise upon a new trial. The challenged restriction upon the voir dire interrogation of a juror whose husband operated a retail business is not likely to be imposed again in the same form if at all. The same is true of the numerous instances of leading questions cited by the defendant, to most of which he raised no objection. Only one ruling upon such questions was preserved for appeal by an exception as required. Practice Book § 288. It is quite unlikely that any of these problems will arise at a new trial so we shall not discuss them further. The question concerning the charge of the court that the jury should not consider the wholesale price in determining the value of the stoves may conceivably recur, but we deem any discussion of that problem inappropriate in the absence of some indication that the wholesale price was a proper yardstick for the measurement of market value in this case.

The defendant also claims that records of his account with a bank were improperly introduced into evidence through a witness from the bank. He raises a claim that the admission of this evidence, which consisted of copies of some checks drawn on his account, two of which had been previously introduced through a police officer, violated his constitutional privilege against self-incrimination. He also claims that the statutory procedure for obtaining his financial records from the bank, as prescribed by General Statutes § 36-9*l*, was not followed because of the failure to serve a copy of the sub-

poena upon him and the absence of a proper waiver of such service. The state concedes this oversight and it will probably not be repeated at a new trial.

It is appropriate for us to respond to the constitutional claim of the defendant, despite his failure to present it to the trial court, since it may be raised at a new trial. The fifth amendment does not serve as a general protector of privacy but only as a prohibition against "compelled testimonial self-incrimination of some sort." *Fisher* v. *United States,* 425 U.S. 391, 399, 96 S. Ct. 1569, 48 L. Ed. 2d 39 (1976). The privilege against self-incrimination is not violated by the enforcement of a subpoena to obtain documents of an accused in the possession of a third party to whom the subpoena is directed. Id., 397. "This is true whether or not the Amendment would have barred a subpoena directing the [accused] to produce the documents while they were in his hands." Ibid. "[T]he Fifth Amendment may protect an individual from complying with a subpoena for the production of his personal records in his possession because the very act of production may constitute a compulsory authentication of incriminating information." *Andresen* v. *Maryland,* 427 U.S. 463, 473–74, 96 S. Ct. 2737, 49 L. Ed. 2d 627 (1976). It is not applicable, however, to records or even statements of an accused obtained from another person by legal process. Id., 475.

Although the defendant has not invoked the fourth amendment, it should be noted that whatever protection may be extended to "private papers" of an individual by the right of privacy implicated by that amendment does not extend to the records of his account kept by the bank. *United States* v. *Miller,* 425 U.S. 435, 443, 96 S. Ct. 1619, 48 L. Ed. 2d 71 (1976). "This Court has held repeatedly that the

Fourth Amendment does not prohibit the obtaining of information revealed to a third party and conveyed by him to Government authorities, even if the information is revealed on the assumption that it will be used only for a limited purpose and the confidence placed in the third party will not be betrayed." Ibid.; *United States* v. *White,* 401 U.S. 745, 751–52, 91 S. Ct. 1122, 28 L. Ed. 2d 453 (1971).

There is error, the judgment is set aside and a new trial is ordered.

In this opinion PETERS, HEALEY and PARSKEY, Js., concurred.

ARMENTANO, J. (dissenting). I dissent because I do not agree that the trial court abused its discretion in denying the defendant's motion to exclude evidence of his prior conviction. This court has on many occasions stated that it will not disturb a trial court's ruling on a motion to exclude evidence of a prior conviction "unless it could not have reasonably concluded as it did, because we make every reasonable presumption in favor of its correctness." *State* v. *Miller,* 186 Conn. 654, 671, 443 A.2d 906 (1982); see *State* v. *Shaw,* 185 Conn. 372, 384, 441 A.2d 561 (1981); *State* v. *Jones,* 167 Conn. 228, 237, 355 A.2d 95 (1974); *State* v. *Bitting,* 162 Conn. 1, 11, 291 A.2d 240 (1971). Although the crime charged and the prior conviction in the present case are more similar than those at issue in *State* v. *Nardini,* 187 Conn. 513, 447 A.2d 396 (1982), and the conviction less remote in time, I am not convinced that the prejudicial impact of the conviction outweighed its probative value as a matter of law. Moreover, the speculation that the defendant's failure to take the stand "may have been

induced at least in part by the fear that his former conviction would come to the attention of the jury" is a factor which relates to the harmfulness of the ruling, and not to the prejudicial impact of the prior conviction which the trial court properly weighed in making that ruling. Accordingly, I do not agree that the defendant is entitled to a new trial.