STATE OF CONNECTICUT *v.* WILLIE L. HARRELL
(11852)

HEALEY, SHEA, DANNEHY, SANTANIELLO and CALLAHAN, Js.

Argued December 13, 1985—decision released March 25, 1986

*Charles E. Oman,* certified legal intern, with whom were *Timothy H. Everett* and, on the brief, *Mark Soboslai, Bernadette Conway* and *Mona Camhe,* certified legal interns, for the appellant (defendant).

*Edmund C. A. Tiryakian,* special deputy assistant state's attorney, with whom, on the brief, were *Arnold Markle,* state's attorney, and *Julia DiCocco Dewey,* assistant state's attorney, for the appellee (state).

ARTHUR H. HEALEY, J. The defendant, Willie L. Harrell, was convicted, after a jury trial, of burglary in the second degree with a firearm, in violation of General

Statutes § 53a-102a,[1] and attempted robbery in the first degree, in violation of General Statutes §§ 53a-49 (a)[2] and 53a-134 (a) (4).[3] The defendant appeals from the judgment of conviction on these charges.

The defendant raises three issues on appeal. He claims that: (1) the trial court abused its discretion in denying his motion in limine to prevent impeachment by the use of evidence of prior convictions; (2) the ruling on the motion in limine effectively precluded the exercise of his state and federal constitutional right to testify; and (3) the trial court erred in its jury instructions on identification. We find no error.

The jury reasonably could have found the following facts relevant to this appeal: On March 20, 1981, at approximately 7 p.m., the Crawford family returned

---

[1] General Statutes § 53a-102a provides in relevant part: "(a) A person is guilty of burglary in the second degree with a firearm when he commits burglary in the second degree as provided in section 53a-102, and in the commission of such offense he uses or is armed with and threatens to use or displays or represents by his words or conduct that he possesses a pistol, revolver, rifle, shotgun, machine gun or other firearm. No person shall be convicted of burglary in the second degree and burglary in the second degree with a firearm upon the same transaction but such person may be charged and prosecuted for both such offenses upon the same information."

[2] General Statutes § 53a-49 (a) provides: "A person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime he: (1) Intentionally engages in conduct which would constitute the crime if attendant circumstances were as he believes them to be; or (2) intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime."

[3] General Statutes § 53a-134 (a) (4) provides in relevant part: "A person is guilty of robbery in the first degree when, in the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime . . . (4) displays or threatens the use of what he represents by his words or conduct to be a pistol, revolver, rifle, shotgun, machine gun or other firearm; except that in any prosecution under this subdivision, it is an affirmative defense that such pistol, revolver, rifle, shotgun, machine gun or other firearm was not a weapon from which a shot could be discharged. . . ."

to their Guilford home from a restaurant and found an unfamiliar car parked in their circular driveway. John Crawford, the father, parked behind the vehicle and he and his wife Catherine exited their car and approached the other vehicle, a red and black Chevrolet. Their three children, ages 12, 11, and 9, remained in the back seat of their car. No one was in the Chevrolet. The Crawfords heard the sound of breaking glass and decided to leave the area. Before they could do so, the defendant approached them from the side of the house, ordered Catherine Crawford to "get [her] hands up," and then ordered the family into their house. He held a flashlight in his left hand, but he kept his right hand in his pocket, telling them that he had a "pistol." The Crawford family, however, never saw a weapon. John Crawford turned the lights on in the foyer of the house but the defendant ordered him to turn them off. The children remained in the kitchen of the home while the defendant questioned their parents in the foyer about valuables. The defendant did not take the stereo or television, the small amount of cash, or the credit cards that the Crawfords offered him. Throughout the five to ten minute confrontation, John Crawford was unable to make out the defendant's features because the defendant was shining a flashlight into his eyes. He was able, however, to determine that the intruder was a black male, approximately six feet tall. Several times the defendant gestured and said that "Crazy Tommy" was with him, that "Crazy Tommy" was uncontrollable and he ordered "Tommy" to "come up." The defendant became nervous and concerned that someone had seen his license plate. Without taking any of the Crawfords' property, the defendant started to leave. As he approached his car, he turned to the left and called: "Come up, Tommy. It is okay." No one ever saw a second individual. After the defendant was in his car, friends of the Crawfords drove into the circu-

lar driveway and blocked his exit. The defendant yelled to have that car moved out of his way and Catherine Crawford ran to the car, removed a girl from the car and told the girl's father to leave. Both drivers then drove out of the driveway.

Michael, the twelve year old son of Catherine and John Crawford, memorized the license plate number and color of the burglar's car ("red [with] black roof") and, once in the kitchen, wrote this information on his hand with a pen. Catherine Crawford also memorized the license plate number. Michael and Catherine were able to give a description of the defendant to the police who arrived at their home immediately afterward. By using the license plate number memorized by Michael, the police were able to determine that the vehicle was registered to the defendant. At a photo array four days later, Michael and Catherine independently selected the defendant's photo as the man who had burglarized their home.

At trial, after the state had rested, the defendant made a motion for a judgment of acquittal, which the trial court denied. The defendant then filed a written motion in limine[4] requesting that, if he should testify, the court prohibit the state from using for impeachment purposes the defendant's prior convictions in 1971 for two counts of robbery with violence and in 1976 for attempted burglary in the third degree.[5] Before argu-

---

[4] A motion in limine "in a broad sense [refers] to any motion, whether made before or during trial, to exclude anticipated prejudicial evidence before the evidence is actually offered." *Luce* v. *United States,* 469 U.S. 38, 40 n.2, 105 S. Ct. 460, 83 L. Ed. 2d 443 (1984).

[5] "MOTION IN LIMINE

"Defendant in the above-entitled action moves this Court for an order prohibiting the use of prior felony convictions, to wit, two counts of robbery with violence in 1971 and criminal attempt at burglary in the third degree in 1976, to impeach his credibility should he testify. Defendant, who is desirous of testifying in his own defense, argues that the simitarily [sic] of those felony convictions is too close in substance to the instant crimes

ment on the motion, defense counsel orally amended his motion so that it included a total of four prior convictions, two counts of robbery with violence and one count each of forgery and attempted false pretenses.[6] The release date from incarceration for the two 1971 robbery convictions was June 29, 1973, which was "nine years, three months, one day" from the date the motion was argued in court. The trial court denied the motion. The defendant did not testify, and the jury returned guilty verdicts.

I

The defendant's first claim of error is that the trial court's ruling that the defendant could be impeached with his two prior convictions for robbery with violence was an abuse of discretion because of their prejudicial impact and remoteness in time to the present crimes. A criminal defendant who has previously been convicted of a crime carrying a term of imprisonment of more than one year may be impeached by the state if his credibility is in issue. General Statutes § 52-145 (b).[7] See *State* v. *Braswell,* 194 Conn. 297, 307, 481 A.2d 413 (1984), cert. denied, 469 U.S. 1112, 105 S. Ct. 793, 83 L. Ed. 2d 786 (1985); *State* v. *Nardini,* 187 Conn.

charged so as to cause prejudice far in excess of the probative value on credibility they might carry.

"Alternatively, defendant moves this court to order that mention be made only of the fact that the defendant stands convicted of three felonys [sic], prohibiting mention of what those felonys [sic] are."

[6] Despite the fact that the defendant's motion states that one of the convictions he wished to have excluded was a 1976 conviction, it is not at issue here. Although the defendant's motion in limine included his prior convictions for forgery and attempted false pretenses, he does not raise as error on this appeal the trial court's ruling as to the admissibility of those two prior convictions. He conceded during oral argument on the motion that the prior convictions for forgery and attempted false pretenses "would have a very strong bearing on credibility." We do not review, therefore, the trial court's ruling as to these crimes.

[7] The defendant's four prior convictions were all for felonies and carried possible terms of imprisonment of more than one year.

513, 521, 447 A.2d 396 (1982); *Heating Acceptance Corporation* v. *Patterson,* 152 Conn. 467, 472, 208 A.2d 341 (1965).

"A trial court's decision denying a motion to exclude a witness' prior record, offered to attack his credibility, will be upset only if the court abused its discretion."[8] *State* v. *Binet,* 192 Conn. 618, 623, 473 A.2d 1200 (1984); *State* v. *Braswell,* supra; *State* v. *Bitting,* 162 Conn. 1, 10–11, 291 A.2d 240 (1971). This court has identified three factors that should be analyzed in order to determine whether a prior conviction is to be admitted: "(1) the extent of the prejudice likely to arise; (2) the significance of the commission of the particular crime in indicating untruthfulness; and (3) its remoteness in time." *State* v. *Nardini,* supra, 522.

We recognize that "[w]here the prior crime is quite similar to the offense being tried, a high degree of prejudice is created and a strong showing of probative value would be necessary to warrant admissibility." Id.; see *State* v. *Carter,* 189 Conn. 631, 642–43, 458 A.2d 379 (1983). "There is, of course, no per se rule prohibiting impeachment of a defendant by proof of a prior conviction of a crime similar to that for which he is being tried when that prior conviction is offered to attack his credibility." *State* v. *Binet,* supra, 622. The trial court specifically noted, after the state's case-in-chief and prior to argument on the motion in limine, that the case "boil[ed] down at this point to a pure question of credibility. That being, was the defendant there that night

---

[8] In *State* v. *Nardini,* 187 Conn. 513, 524, 447 A.2d 396 (1982), we noted that rule 609 of the federal rules of evidence attempts to accommodate "these conflicting views of human nature" concerning the impact on a jury of prior conviction evidence. In that regard, we note that "[a]bout forty states have taken a position similar to Fed. R. Evid. 609, providing for the exercise of discretion in the admission of evidence of most prior convictions. See 3 J. Weinstein & M. Berger, Evidence, par. 609 [12], at 609–109 to 609–137 (1982 & Supp. 1984)." *Commonwealth* v. *Maguire,* 392 Mass. 466, 468, 467 N.E.2d 112 (1984).

or was he not." While there is some similarity between the defendant's two prior convictions for robbery with violence and burglary in the second degree and attempted robbery in the first degree, this similarity, standing alone, does not necessarily create prejudice which outweighs probative value. "In moving to bar introduction of prior convictions a defendant in a criminal case bears the burden of demonstrating the specific harm that will occur if the convictions are introduced." *State* v. *Braswell,* supra, 308. The trial court must undertake a balancing test to determine if the probative value of the prior convictions outweighs any prejudicial impact. " 'This balancing of intangibles —probative values against probative dangers—is so much a matter where wise judges in particular situations may differ that a lee-way of discretion is generally recognized.' McCormick, Evidence, pp. 319–320." *State* v. *Bitting,* supra, 10; *State* v. *Nardini,* supra, 522, 528. As in *State* v. *Braswell,* supra, "the record indicates that the defendant's argument in support of his motion amounted to little more than a perfunctory recitation of the prior conviction, a conclusory statement as to its prejudicial effect, and a request for a ruling."

While in this case the defendant also argued the third *Nardini* factor, the remoteness in time of the conviction, the trial court, well within its discretion and in considering all the factors, determined that "remoteness is not really involved here." Acknowledging that the rule in Connecticut is moving closer to the federal ten year rule, the trial court deemed a nine year old release date to satisfy the remoteness in time factor. See *State* v. *Nardini,* supra, 526. In addition, the trial court concluded that "the prejudice is [not] that great," specifically noting that "the larceny which is the underlying crime in any robbery does go directly to the credibility of the robber or larcener . . . ." See, e.g., *State*

v. *Glenn,* 194 Conn. 483, 499, 481 A.2d 741 (1984); *State* v. *Nardini,* supra, 526. As we have noted, "crimes involving larcenous intent imply a general disposition toward dishonesty," and convictions for this type of crime "obviously bear heavily on the credibility of one who has been convicted of them. The probative value of such convictions, therefore, may often outweigh any prejudice engendered by their admission." *State* v. *Geyer,* 194 Conn. 1, 12, 480 A.2d 489 (1984). Thus, robbery with violence is a crime which is relevant to the defendant's character for truthfulness and veracity.

The trial court sufficiently reflected upon and weighed the three factors enunciated in *Nardini* and its ruling on the motion in limine cannot be said to have been an abuse of discretion.

## II

The defendant's second claim is that the trial court's ruling on his motion in limine effectively precluded him from exercising his constitutional right to testify as guaranteed by article first, § 8, of the state constitution and the sixth and fourteenth amendments to the federal constitution. We do not agree. We recognize that a defendant may be faced with the dilemma of either testifying and facing the possibility of impeachment by prior convictions or not taking the stand and thus not personally being able to present his version of the events to the jury. Nevertheless, it has been recognized that the constitutional right to testify does not carry with it a right to prohibit impeachment by prior convictions. See *McGautha* v. *California,* 402 U.S. 183, 215, 91 S. Ct. 1454, 28 L. Ed. 2d 711 (1971); *Spencer* v. *Texas,* 385 U.S. 554, 561, 87 S. Ct. 648, 17 L. Ed. 2d 606 (1967); *Brown* v. *United States,* 356 U.S. 148, 155, 78 S. Ct. 622, 2 L. Ed. 2d 589 (1958); *People* v. *Montez,* 197 Colo. 126, 589 P.2d 1368 (1979); *State* v. *Kelley,* 413 A.2d 300, 303 (N.H. 1980). In *McGautha,*

the United States Supreme Court said: "It is not thought overly harsh in such situations to require that the determination whether to waive the privilege take into account the matters which may be brought out on cross-examination. . . . Again, it is not thought inconsistent with the enlightened administration of criminal justice to require the defendant to weigh such pros and cons in deciding whether to testify." *McGautha* v. *California,* supra, 215. "A defendant may decide not to take the witness stand because of the risk of cross-examination. But this is a choice of litigation tactics." *Jenkins* v. *Anderson,* 447 U.S. 231, 238, 100 S. Ct. 2124, 65 L. Ed. 2d 86 (1980).

The defendant claims that his decision not to testify at trial was directly related to the trial court's ruling on the motion in limine. As a result of the ruling, the defendant argues, he was prevented from exercising his fundamental right to present a defense, specifically his alibi defense.[9] The state argues that the trial court's ruling denying the defendant's motion in limine is not reviewable on appeal if the defendant does not testify at trial. The state argues that the ruling on a motion in limine is merely provisional, an "advisory, tentative indication of what the court is likely to do if faced with the same situation during trial . . . thereby allowing a defendant a more intelligent exercise of his fifth amendment rights" and allowing him to "avert the possibility of impeachment, if he so chooses." The state also claims that there is "no indication whatsoever" on the record that the defendant represented to the trial court that his decision on whether to testify hinged on the court's ruling on the motion in limine. The

[9] The defendant's alibi, that two hitchhikers that he had picked up had stolen his automobile early on the evening of the robbery and that he had called his girlfriend and asked her to report the theft to the police, did come in through the testimony of his girlfriend and the arresting police officer to whom he had given this alibi story.

defendant, in his reply brief, claims that the statement in his written motion in limine that he was "desirous of testifying in his own defense" is a sufficient indication that the defendant intended to testify.[10]

For the purposes of this appeal and because of our disposition of the first issue, we will follow the ruling of *Luce* v. *United States,* 469 U.S. 38, 105 S. Ct. 460, 83 L. Ed. 2d 443 (1984), prospectively only. That ruling is not to be made applicable to our disposition of this case. In the case before us, the defendant was faced with possible impeachment by the introduction of evidence of his convictions of four prior felonies. On appeal, he alleges a constitutional error because the ruling, at least as to the two robbery convictions, caused him to forego testifying. While this court has previously reviewed on appeal trial courts' rulings on motions in limine on the admissibility of prior convictions; see *State* v. *Binet,* supra, 621; *State* v. *Iasevoli,* 188 Conn. 325, 326–27, 449 A.2d 996 (1982); *State* v. *Nardini,* supra, 529; we have decided to follow the holding of the United States Supreme Court in *Luce* v. *United States,* supra.[11] The *Luce* court, in an opinion written by Chief Justice Burger, held that to "raise and preserve for review the claim of improper impeachment with a prior conviction,

[10] The defendant cites *State* v. *Iasevoli,* 188 Conn. 325, 328 n.3, 449 A.2d 996 (1982), as supporting his claim that there was a sufficient indication that he wanted to testify at his trial.

[11] *Luce* v. *United States,* 469 U.S. 38, 105 S. Ct. 460, 83 L. Ed. 2d 443 (1984), construed federal rule of evidence 609 (a) which provides: "General Rule.—For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record during cross-examination but only if the crime (1) was punishable by death or imprisonment in excess of one year under the law under which he was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the defendant, or (2) involved dishonesty or false statement, regardless of the punishment."

While we do not have this rule specifically articulated in our procedure, its amenability to our practice and the rationale of the *Luce* court in construing it is persuasive so that we have determined to follow *Luce.*

a defendant must testify." *Luce* v. *United States,* supra, 43. The reasons for requiring the defendant to testify are several. If the defendant testifies at his trial and then challenges the trial court's ruling on the admissibility of impeachment evidence, the reviewing court "would then have had a complete record detailing the nature of [the appellant's] testimony, the scope of the cross-examination, and the possible impact of the impeachment on the jury's verdict." Id., 41. In addition, *Luce* acknowledged that a reviewing court is particularly "handicapped in any effort to rule on subtle evidentiary questions outside a factual context. This is particularly true [where a court is called upon] to weigh the probative value of a prior conviction against the prejudicial effect to the defendant." Id. Therefore, to accomplish this balancing, "the court must know the precise nature of the defendant's testimony, which is unknowable when . . . the defendant does not testify." Id.

Although we follow *Luce* prospectively, reference to the defendant's trial demonstrates why it is judicious to do so. The defendant did not testify at his trial because, as he now claims, he did not want to be impeached with evidence of his prior crimes. On appeal, he challenges the admissibility of only the two robbery convictions. A reviewing court is unable to determine accurately that the defendant's decision not to testify was solely the result of the ruling as to the robbery convictions and not because of the ruling as to his convictions for forgery and attempted false pretenses. There was scant evidence that the defendant would have offered any testimony had the motion been granted and no evidence at all that the trial court was unwilling to consider altering the ruling on the basis of the defendant's actual trial testimony. "Any possible harm flowing from a [trial] court's in limine ruling permitting impeachment by a prior conviction is wholly specula-

tive. The ruling is subject to change when the case unfolds, particularly if the actual testimony differs from what was contained in the defendant's proffer. Indeed even if nothing unexpected happens at trial, the [trial] judge is free, in the exercise of sound judicial discretion, to alter a previous in limine ruling." Id., 41–42. "Because an accused's decision whether to testify 'seldom turns on the resolution of one factor' . . . a reviewing court cannot assume that the adverse ruling motivated a defendant's decision not to testify." Id., 42.

We follow *Luce* prospectively in order that those defendants who have relied on previous decisions of this court that did not require a defendant to testify will not be prejudiced by this rule. We look to the three factors outlined in *Chevron Oil Co.* v. *Huson,* 404 U.S. 97, 92 S. Ct. 349, 30 L. Ed. 2d 296 (1971), to demonstrate that a retroactive application of the *Luce* holding would be substantially unjust. See *Linkletter* v. *Walker,* 381 U.S. 618, 639, 85 S. Ct. 1731, 14 L. Ed. 2d 601 (1965)(holding that the rule of *Mapp* v. *Ohio,* 367 U.S. 643, 81 S. Ct. 1684, 6 L. Ed. 2d 1081 [1961], does not apply retroactively to state court convictions which were already final before the decision was published). Our ruling today satisfies the first factor delineated in *Chevron* because it "establish[es] a new principle of law . . . by overruling clear past precedent on which litigants may have relied . . . .' " *Chevron Oil Co.* v. *Huson,* supra, 106; see *State* v. *Johnson,* 188 Conn. 515, 518A, 450 A.2d 361 (1982). The second factor is " 'whether retrospective operation will further or retard its operation.' " *Chevron Oil Co.* v. *Huson,* supra, 106–107. The Ninth Circuit case of *United States* v. *Givens,* 767 F.2d 574, 578 (9th Cir. 1985), is instructive on this second factor. Cf. *United States* v. *Dunbar,* 767 F.2d 72 (3d Cir. 1985) (appeals court applied holding of *Luce* retroactively for the defendant). The facts

of *Givens* are analogous to the facts of the case before us. In *Givens,* the defendant's trial preceded the United States Supreme Court's decision in *Luce.* At his trial, the defendant sought to preserve for appellate review the claim of improper impeachment with a prior conviction and did so as required "by the law of the [Ninth] Circuit" at the time of his trial. *United States* v. *Givens,* supra, 577, 578. The defendant did not testify at trial. The Ninth Circuit stated that although "application of the *Luce* principle to the present case arguably would further the purpose of the rule by providing the trial court with concrete testimony on which to base its ruling . . . the first and third factors militate so strongly against retroactive application that they outweigh the second factor." Id., 578. The third *Chevron* factor is whether applying the new decision retroactively will produce substantial inequitable results. *Chevron Oil Co.* v. *Huson,* supra, 107. As did the court in *Givens,* we refuse here to impose a "subsequently-created [requirement] for preserving a claim on appeal on a defendant who did all that was necessary to comply with the law applicable at the time of his trial." *United States* v. *Givens,* supra, 579; see *Reed* v. *Reincke,* 155 Conn. 591, 596, 236 A.2d 909 (1967); *Chykirda* v. *Yanush,* 131 Conn. 565, 569, 41 A.2d 449 (1945). To do otherwise would produce a substantially inequitable result.

### III

The defendant's final claim is that the trial court erred in failing to give the requested "model" *Telfaire* instruction on identification.[12] *United States* v. *Telfaire,* 469 F.2d 552 (D.C. Cir. 1972). The defendant claims

---

[12] "The charge requested by the defendant emphasized four basic considerations: (1) the capacity and opportunity of the witnesses to observe the offender; (2) whether the identification made by the witnesses was from their own recollection; (3) the failure or inconsistency of the identification; and (4) the credibility of the witnesses." *State* v. *McKnight,* 191 Conn. 564, 582 n.16, 469 A.2d 397 (1983).

that the trial court granted his request to charge on this issue[13] but failed to give the requested instruction. He claims that the failure to instruct on the *Telfaire* charge constituted reversible error because it violated his right to an "adequately instructed jury." The defendant also argues that this failure to charge violated Practice Book § 852[14] and constituted reversible error. We do not agree.

"When a proper request is filed pursuant to Practice Book § 852 or exception is taken pursuant to § 854 the test is whether the charge properly covered the substance of the written request or properly and adequately covered the specific subject matter of the exception." *State* v. *Kurvin,* 186 Conn. 555, 561, 442 A.2d 1327 (1982). "The trial court is not under a duty in a criminal proceeding to charge in the identical language requested if its charge is accurate, adequate and, in substance, properly includes material portions of the defendant's request; its responsibility is performed when it gives instructions to the jury in a manner calculated to give them a clear understanding of the issues presented for their consideration, under the offenses charged and upon the evidence, and when its instructions are suited to their guidance in the determination of those issues." *State* v. *Harden,* 175 Conn. 315, 322–23, 398 A.2d 1169 (1978). The defendant concedes that *Telfaire* instructions "need not be given verbatim

---

[13] After the instructions were given to the jury and the jury was excused, the following discussion took place: "Mr. Sturman: Your Honor, I am going to take an exception to your Honor's not including in total the *Telfaire* instruction.

"The Court: Very well. I don't think I mentioned on the record that granting both of your requests of charge as charged [sic]."

[14] Practice Book § 852 provides in pertinent part: "If a request to charge is granted, the judicial authority shall apply the proposition of law to the facts of the case. A principle of law should be stated in but one request and in but one way. Requests attempting to state in different forms the same principle of law as applied to a single issue are improper."

to ensure that the attention of the jury is properly guided." The instruction[15] given by the trial judge covered the substance of the written request. While the instruction did not delineate specific factors for the jury to consider in assessing identification testimony in such detail as in *Telfaire,* it did caution the jury to "consider carefully whether or not that witness is accurate in his belief and in his testimony." It told the jury that the "vagaries" of eyewitness identification were "well-known" and that the jury should receive such testimony "with caution" and consider it "carefully." In focusing the jury's attention to such testimony, the court also instructed it to "scrutinize with care all such eyewitness identifications." The jury was also charged to "consider what opportunity each person had to make an observation, whether or not that person had seen the defendant before and all of the other circumstances surrounding such observation."

Further, we do not agree with the defendant's contention that identification was the "sole material element of the crimes in substantial dispute." Two witnesses, Catherine Crawford and her son Michael, were independently able to select the defendant from a photographic array as well as to make an in-court identification at trial. The factual circumstances of this case indicate that this is not a case that exhibits "the special difficulties often presented by identification testimony that would require additional information be

---

[15] The trial court charged the jury as follows: "You have heard testimony from eyewitnesses in this case. The vagaries of eyewitness identifications are well known and you should receive with caution any identification testimony from an eyewitness and consider carefully whether or not that witness is accurate in his belief and in his testimony. You should scrutinize with care all such eyewitness identification. You should consider what opportunity each person had to make an observation, whether or not that person had seen the defendant before and all of the other circumstances surrounding such observation. Eyewitness identification is sometimes unreliable but its weight like the weight of any testimony is ultimately for you to decide."

given to the jury in order . . . to repose confidence in their ability to evaluate the reliability of the identification." *United States* v. *Telfaire,* supra, 556. The eyewitnesses were not "uncertain, unclear or inconsistent." *State* v. *Harden,* supra, 322. The defendant's claim that the eyewitnesses' description of the defendant to the police as "cleanshaven" was inconsistent with subsequent photographic and courtroom identifications of the defendant who had facial hair does not, in and of itself, mandate more detailed instructions. There was extensive cross-examination of the eyewitnesses by defense counsel as to their ability to see and identify the individual who committed the robbery. We note that in *State* v. *McKnight,* 191 Conn. 564, 582, 469 A.2d 397 (1983), the defendant had also requested the "model" *Telfaire* instruction. In *McKnight,* the trial court did not adopt verbatim the *Telfaire* instruction but did give an instruction which "adequately covered the dangers of misidentification." *State* v. *McKnight,* supra, 583. As in *McKnight,* the charge as given here was adequate to address the "dangers of misidentification" under the facts of this case, especially when the main focus of the trial was a "pure question of credibility." The specific instructions given to the jury were a correct statement of the law, and our review indicates that the charge as a whole fairly presented the case to the jury so "that injustice was not done under the law to the legal rights of the defendant." *State* v. *Cooper,* 182 Conn. 207, 211, 438 A.2d 418 (1980); *State* v. *Manley,* 195 Conn. 567, 586, 489 A.2d 1024 (1985); see *State* v. *McKnight,* supra, 584.

There is no error.

In this opinion DANNEHY, SANTANIELLO and CALLAHAN, Js., concurred.

SHEA, J., concurring. I disagree with part I of the opinion, which finds no error in the denial of the motion

in limine that sought to prevent the state from using the defendant's two 1971 convictions for robbery with violence to impeach him. Under the balancing test we have approved; *State* v. *Nardini,* 187 Conn. 513, 521, 447 A.2d 396 (1982); *State* v. *Marquez,* 160 Conn. 47, 52, 273 A.2d 689 (1970); the prejudicial effect of these crimes was quite substantial in view of their similarity to the offenses charged in the present case. *State* v. *Carter,* 189 Conn. 631, 642–44, 458 A.2d 379 (1983). "Where the prior crime is quite similar to the offense being tried, a high degree of prejudice is created and a strong showing of probative value would be necessary to warrant admissibility." *State* v. *Nardini,* supra, 522. The probative value of the robbery convictions, however, was slight, not only because their age barely falls within the ten year federal limitation we have referred to as a "rough bench mark"; *State* v. *Nardini,* supra, 526; Fed. R. Evid., rule 609 (a); but also because of the minimal significance of these convictions as reflecting upon the credibility of the defendant in comparison to his convictions in 1976 for forgery and attempted larceny by false pretenses, which were also available for impeachment.

The forgery and false pretense convictions clearly involved dishonesty and falsehood and, therefore, were highly significant upon the credibility of the defendant. *State* v. *Carter,* supra, 644. The slight additional significance on credibility the remote convictions for robbery may have had was clearly outweighed by the substantial prejudice their use entailed because of their similarity to the crimes on trial. Since the substantial prejudicial effect of the robbery convictions cannot be gainsaid and their probative value on the issue of the defendant's credibility is only marginal at best, a proper application of the balancing test, with all due deference to trial court discretion, plainly required exclusion of those convictions from evidence.

Although I would find error in the refusal of the trial court to bar the use of the robbery convictions, I am persuaded that the error was harmless. The applicable standard for this nonconstitutional error is the probability of a different outcome. *State* v. *Randolph,* 190 Conn. 576, 588–89, 462 A.2d 1011 (1983). "The erroneous admission of the [conviction] was harmful only if the improper [evidence] was likely to have affected the jury's verdict." *State* v. *Brown,* 187 Conn. 602, 611, 447 A.2d 734 (1982). The testimony that two witnesses, the mother and her son, had separately observed and memorized the license plate on the car found to have been registered in the name of the defendant, as well as their independent selection of him as the offender from photo arrays that are unchallenged, is overwhelming evidence of guilt that more than adequately satisfies this standard.

Accordingly, I concur in the result.