## STATE OF CONNECTICUT *v.* RICARDO MILLS
### (AC 23360)

Lavery, C. J., and Dranginis and McLachlan, Js.

---

Argued October 17—officially released December 30, 2003

*E. Paul Haringa*, assistant public defender, with whom was *Suzanne Zitser*, assistant public defender, for the appellant (defendant).

*Melissa L. Streeto*, deputy assistant state's attorney, with whom, on the brief, were *John A. Connelly*, state's attorney, and *Gail P. Hardy*, assistant state's attorney, for the appellee (state).

*Opinion*

McLACHLAN, J. The defendant, Ricardo Mills, appeals from the judgment of conviction, rendered following a jury trial, of assault in the first degree in violation of General Statutes § 53a-59. On appeal, he claims that the trial court abused its discretion by denying his motion to introduce evidence of the dying declarant's prior convictions in violation of the defendant's right of confrontation. We affirm the judgment of the trial court.

This appeal arises from an argument over a dog. On September 16, 1996, the victim, Ralph Hickey, and several other persons were visiting Laura Blumberg and James Blumberg in Waterbury. At approximately 6:30 p.m., the defendant, a friend of the Blumbergs, knocked on the door of their apartment. After being invited in by James Blumberg, the defendant headed toward the victim and began arguing about an incident involving the defendant's dog. The defendant punched the victim in the face, a fight ensued and the other guests fled the room. During the struggle, the defendant picked up a knife and stabbed the victim several times. Shortly after the fight, the victim left with Laura Blumberg to go to Southbury by car. During the trip, the victim, suffering the effects of the stab wounds, drove into the Southbury Food Center parking lot. Police and medical personnel were called. They transported the victim to St. Mary's Hospital in Waterbury, where he later died.

The defendant was immediately arrested and charged. In his first jury trial, he was convicted of manslaughter in the first degree and assault in the first degree. On appeal, this court reversed the conviction due to prosecutorial misconduct and remanded the case for a new trial. *State* v. *Mills*, 57 Conn. App. 202, 748 A.2d 318, cert. denied, 253 Conn. 914, 915, 754 A.2d 163 (2000).

The defendant was retried in February, 2002. At trial, Officer George Slaiby of the Southbury police department testified that when he arrived at the parking lot on September 16, 1996, the victim responded that he had been in an altercation with the defendant over a dog, during which the victim was stabbed. Though hearsay, that statement was admitted by the court as a dying declaration. The defendant later sought to impeach that testimony by introducing into evidence "the dates and times and convictions of felonies of the

victim." The court denied the motion.[1] The jury found the defendant guilty of assault in the first degree. As in the defendant's first trial, the court sentenced the defendant to fifteen years incarceration, execution suspended after twelve years, with five years probation. This appeal followed.

## I

This case causes us to consider the dying declaration, an issue seen more in law school classrooms and bar examination halls than in actual practice. Its rationale was explained by Chief Baron Eyre in *Rex* v. *Woodcock*, 1 Leach 500, 502, 168 Eng. Rep. 352 (K.B. 1789): "Now the general principle on which this species of evidence is admitted is, that they are declarations made in extremity, when the party is at the point of death, and when every hope of this world is gone: when every motive to falsehood is silenced, and the mind is induced by the most powerful considerations to speak the truth; a situation so solemn, and so awful, is considered by the law as creating an obligation equal to that which is imposed by a positive oath administered in a Court of Justice."

The dying declaration is admissible in evidence as an exception to the hearsay rule. "[A] victim's statement may be admissible, in a criminal prosecution for the victim-declarant's death . . . as a dying declaration if (1) the declarant was conscious of impending death and (2) the statement concerns the cause of death or the circumstances surrounding the death." (Citation omitted.) *State* v. *Onofrio*, 179 Conn. 23, 43–44, 425 A.2d 560 (1979); *In re Jose M.*, 30 Conn. App. 381, 391, 620 A.2d 804, cert. denied, 225 Conn. 921, 625 A.2d 821 (1993); Conn. Code Evid. § 8-6 (2).

At issue in this appeal is whether a party may impeach the testimony of a dying declarant by introducing evi-

---

[1] The defendant did not seek articulation of the ruling.

dence of the declarant's prior convictions. The defendant claims that he was so entitled and that the court improperly excluded that evidence.

Professor Wigmore states that "[t]he dying declaration being in effect a testimonial statement made out of court . . . the declarant is open to impeachment and discrediting in the same way as other witnesses . . . . Thus, impeachment by . . . conviction of crime . . . is allowable . . . ." (Citations omitted.) 5 J. Wigmore, Evidence (3d Ed. 1940) § 1446, pp. 246–47. Commentators have consistently agreed with that statement.[2] As one has stated, "dying declarations are no more sacred against attack than is other testimony; the deceased is no more immune than a living witness from impeachment." B. Kliks, "Impeachment of Dying Declarations," 19 Or. L. Rev. 265, 266 (1940).

Other states agree. In *Commonwealth* v. *Moses*, 436 Mass. 598, 602–603, 766 N.E.2d 827 (2002), the Supreme Judicial Court of Massachusetts held that "[i]t was error to deny the defendant the opportunity to impeach [the dying declarant's] credibility by evidence that would have been admissible if [the declarant] had testified, namely, evidence of his prior convictions." Similarly, in *People* v. *Ricken*, 242 App. Div. 106, 109–10, 273 N.Y.S. 470 (1934), the Appellate Division of the New York Supreme Court stated that "[h]ad the declarant

---

[2] See, e.g., 2 F. Wharton, Criminal Evidence (14th Ed. Torcia 1986) § 333, pp. 376–77 ("A dying declaration is subject to impeachment. It may be impeached in any way that the declarant's testimony could have been impeached if he had lived and testified under oath. Thus, the declarant may be impeached in any way that the law authorizes a living witness to be impeached."); 2 Jones on Evidence (6th Ed. 1972) § 9:2, p. 190 ("such declarations are pure hearsay and open to all the objections which may be urged against that class of testimony"); B. Kliks, "Impeachment of Dying Declarations," 19 Or. L. Rev. 265, 276 (1940) ("rule is well established that one may impeach a dying declaration and lessen its effect by showing that the deceased had been convicted of a crime, and may introduce the record of conviction for that purpose").

appeared in person as a witness upon the trial, such conviction could properly have been shown. The situation is not changed by the fact that he is not personally present. It strengthens the claim of the defendant to the right of impeachment. He has been deprived of his strongest arm of defense—cross-examination, and to now deprive him of the benefits of impeachment would be carrying the exception to unwarranted limits. Dying declarations are to be regarded as any other testimony in the case and the same tests are to be applied to ascertain their credibility."

Section 6-7 (a) of the Connecticut Code of Evidence permits a party to impeach testimony through the introduction of prior convictions.[3] Our Supreme Court has interpreted General Statutes § 52-145[4] as allowing the use of a witness' prior conviction to impeach credibility when the conviction was for a crime punishable by imprisonment in excess of one year. *State* v. *Geyer*, 194 Conn. 1, 10, 480 A.2d 489 (1984). Section 8-8 of the Connecticut Code of Evidence provides in relevant part: "When hearsay has been admitted in evidence, the credibility of the declarant may be impeached . . . by any evidence that would be admissible for those purposes if the declarant had testified as a witness. . . ." We agree with the great weight of authority that prior convictions may be used to impeach the testimony of a dying declarant. The defendant was therefore entitled

---

[3] Connecticut Code of Evidence § 6-7 (a) provides: "For the purpose of impeaching the credibility of a witness, evidence that a witness has been convicted of a crime is admissible if the crime was punishable by imprisonment for more than one year. In determining whether to admit evidence of a conviction, the court shall consider:

"(1) The extent of the prejudice likely to arise,

"(2) the significance of the particular crime in indicating untruthfulness, and

"(3) the remoteness in time of the conviction."

[4] General Statutes § 52-145 (b) provides: "A person's interest in the outcome of the action or his conviction of crime may be shown for the purpose of affecting his credibility."

to seek to introduce such evidence to impeach the dying declarant.

## II

Because a dying declaration may be impeached by the victim's criminal record, is the defendant correct in his claim that the court's denial of his motion to introduce the dying declarant's prior convictions violated his sixth amendment right of confrontation?[5] A court's decision on a motion to introduce a witness' criminal record, offered to attack his credibility, will be upset only if the court abused its discretion. *State* v. *Harrell*, 199 Conn. 255, 261, 506 A.2d 1041 (1986); *State* v. *Vitale*, 76 Conn. App. 1, 6, 818 A.2d 134, cert. denied, 264 Conn. 906, 826 A.2d 178 (2003).

Our Supreme Court has held that "the state's use of hearsay evidence against an accused in a criminal trial is limited by the confrontation clause of the sixth amendment." *State* v. *Merriam*, 264 Conn. 617, 633, 835 A.2d 895 (2003). Essential to that right is the ability to cross-examine. See *Douglas* v. *Alabama*, 380 U.S. 415, 418, 85 S. Ct. 1074, 13 L. Ed. 2d 934 (1965). Cross-examination has been described as "the greatest legal engine ever invented for the discovery of truth . . . ." (Internal quotation marks omitted.) *California* v. *Green*, 399 U.S. 149, 158, 90 S. Ct. 1930, 26 L. Ed. 2d 489 (1970). For that reason, "[e]very criminal defendant must be provided with the opportunity fairly and fully to confront and cross-examine adverse witnesses." *State* v. *Maldonado*, 193 Conn. 350, 356, 478 A.2d 581 (1984). "In order to comport with the constitutional standards embodied in the confrontation clause, the

---

[5] The defendant also contends that the denial violated his right of confrontation under article first, § 8, of our state constitution. The defendant has provided no independent state constitutional analysis for his claim. Thus, we limit our review to the defendant's federal constitutional claim. See *State* v. *Merriam*, 264 Conn. 617, 631 n.17, 835 A.2d 895 (2003).

trial court must allow a defendant to expose to the jury facts from which the jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness." (Internal quotation marks omitted.) *State* v. *Arline*, 223 Conn. 52, 60, 612 A.2d 755 (1992).

In the present case, the dead victim's voice echoed through the courtroom, identifying the defendant as his assailant. The defendant's only effective means of confronting that witness' credibility was through the introduction of prior convictions. A dying declarant, as with any other witness, must be subjected to the crucible of confrontation, for "the defendant has the right to explore every facet of relevant evidence pertaining to the credibility of those who testify against him." (Internal quotation marks omitted.) *State* v. *Rodriguez*, 180 Conn. 382, 393–94, 429 A.2d 919 (1980).

The defendant sought to introduce the victim's prior convictions, but was not permitted to do so. We apply the abuse of discretion standard to determine whether the court was correct in excluding the record of the victim's prior convictions. See *State* v. *Harrell*, supra, 199 Conn. 261. To do so, we must examine the victim's convictions by applying the factors set forth in § 6-7 (a) of the Connecticut Code of Evidence: "In determining whether to admit evidence of a conviction, the court shall consider: (1) The extent of the prejudice likely to arise, (2) the significance of the particular crime in indicating untruthfulness, and (3) the remoteness in time of the conviction." The record of convictions, however, was not marked as an identification exhibit, nor was an offer of proof made. Thus, this court, like the trial court, has no knowledge of the details of the victim's convictions. We are therefore unable to evaluate the extent of the prejudice likely to arise, the significance of the particular crimes in indicating untruthfulness and the remoteness in time of the convictions; see

*State* v. *Nardini*, 187 Conn. 513, 522, 447 A.2d 396 (1982); Conn. Code Evid. § 6-7 (a); nor are we in a position to balance the probative value of the prior convictions against their prejudicial impact. See *State* v. *Harrell*, supra, 262.

"A claim on appeal cannot be based on an assumption that the trial court acted improperly. . . . Without an adequate record on which to review the rulings of the trial court, this court must assume that the trial court acted properly." (Citation omitted.) *State* v. *James L.*, 26 Conn. App. 81, 85–86, 598 A.2d 663 (1991). Because the record does not contain the details of the declarant's convictions, we are unable to review the convictions by the standard of admissibility set forth in § 6-7 (a) of the Connecticut Code of Evidence. Accordingly, we cannot determine if the court acted improperly.

The judgment is affirmed.

In this opinion the other judges concurred.

